IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

Mosaic Potash Carlsbad, Inc.,

       Plaintiff / Counterclaim Defendant,

vs.                                                  CIVIL NO. 2:16-cv-00808-KG-SMV
                                                                      2:17-cv-01268-KG-SMV

Intrepid Potash, Inc.,
Intrepid Potash-New Mexico, LLC, and
Steve Gamble,

       Defendants / Counterclaimants.

## MOSAIC'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER FROM PLANT INSPECTION

### INTRODUCTION

       Defendants Intrepid Potash, Inc. and Intrepid Potash-New Mexico, LLC's (collectively "Intrepid") response to Plaintiff Mosaic Potash Carlsbad, Inc.'s ("Mosaic") motion for protective order demonstrates why the Court should prevent an inspection by Intrepid of Mosaic's langbeinite facilities. Intrepid's request for an inspection is a transparent attempt to retaliate against Mosaic for pursuing its claims by jeopardizing the confidentiality of Mosaic's current processes (which embody improvements made since Defendant Steve Gamble ("Gamble") left employment with Mosaic).

       Intrepid claims that it needs to "understand" the Mosaic trade secrets it (along with Gamble) already misappropriated by viewing them in operation at Mosaic's plant. Not only is the use of Mosaic's trade secrets not an element of any claim or defense in this action (as Intrepid now concedes), but the misappropriated Mosaic trade secrets are straightforward (covering, for example, the size of a screen aperture or amount of time the mineral is exposed to water). Intrepid fails to explain what about these straightforward trade secrets it cannot

"understand." Intrepid also fails to cite any authority for the proposition that a plant inspection is appropriate to "understand" intellectual property in the first place—instead citing patent cases for the proposition that an *infringer'*s methods are subject to inspection to determine infringement. In fact, the case law is to the contrary—courts protect facilities from inspection where, as here, relevance is dubious and an inspection would threaten to reveal additional trade secret or confidential information.

Unable to explain why it wants an inspection to "understand" straightforward concepts, Intrepid changes course for a third time and claims it needs an inspection to determine whether Mosaic took reasonable steps to maintain the secrecy of its trade secrets. Yet, Intrepid's request for inspection does not actually ask to inspect any of Mosaic's security measures, many of which are electronic in nature (e.g., computer passwords, encryption, etc.) and would not be revealed by a plant inspection in any event. Intrepid also fails to rebut Mosaic's proportionality concerns. The threat of disclosure of Mosaic's new processes in an inspection outweighs whatever dubious relevance Intrepid claims an inspection would have. Intrepid also ignores the conclusive evidence submitted by Mosaic regarding Defendants' joint litigation misconduct in this case. As a result of this misconduct, the stipulated protective order is not an adequate means of assuaging Mosaic's concerns that an inspection will reveal trade secrets that are not at issue in this case.

Finally, Intrepid argues that it requested to inspect Mosaic's improvements to its processes since Gamble's departure because those improvements are irrelevant and it needs to subtract them from the case. Intrepid further tries to fault Mosaic for wishing to maintain the secrecy of these new processes. Intrepid's arguments have no merit, and Mosaic's motion for a protective order should be granted.

# ARGUMENT

### A. Intrepid's Subjective "Understanding" of Mosaic's Trade Secrets Is Not Relevant to Claims or Defenses

As discussed at the Scheduling Conference in this action, Intrepid previously claimed it was entitled to inspect Mosaic's facility because there was a requirement that Mosaic use its trade secrets in its business. Mosaic rebutted this notion in its opening brief and Intrepid has now abandoned this theory of relevance. *See* ECF No. 82 at 8 (stating that Intrepid "does not dispute" Mosaic's argument that there is no requirement that Mosaic use its trade secrets). Instead, Intrepid has now doubled down on its argument that it needs to view Mosaic's trade secrets in operation (to the extent that Mosaic is using or has ever used those trade secrets) "in order to understand them." ECF No. 82.

Intrepid's argument that it needs to inspect Mosaic's entire plant in order to view whatever trade secrets are at issue in this case are still (or have ever been) used in Mosaic's processes is without merit. Intrepid's allusions to "understanding" trade secrets that cover straightforward concepts such as the size of a screen aperture do not meet Intrepid's burden of establishing relevance. Moreover, Intrepid fails to cite any authority in support of the notion that its lack of understanding of Mosaic's trade secrets should grant it unfettered access to Mosaic's facility. In fact, the law is the opposite—the law protects manufacturing facilities using trade secrets (particularly those that are not at issue in the case) from fishing expeditions. *Michelin N. Am., Inc. v. Rea*, 2014 Ariz. App. Unpub. LEXIS 78, at *14 (Ariz. Ct. App. Jan. 21, 2014).

   1. <u>Intrepid Fails to Explain Why It Cannot "Understand" Mosaic's Straightforward Trade Secrets</u>

As the Court can see for itself by examining Mosaic's interrogatory responses (filed under seal), ECF No. 70-4, Mosaic's trade secrets are straightforward (the size of a hole in a screen, the time the mineral is exposed to water, the chemical properties of a granule binder,

3

etc.).  In its opening brief, Mosaic specifically challenged Intrepid to articulate what trade secrets Intrepid was not able to understand, as well as Intrepid's goal for the inspection.  Intrepid's brief contains no response.  Despite arguing that it needs to "understand" Mosaic's trade secrets, Intrepid never articulates what about Mosaic's straightforward trade secrets it cannot learn from reviewing Mosaic's interrogatory answer (and the documents produced therewith) but instead must learn from viewing Mosaic's trade secrets in operation (assuming *arguendo* that any of them are even in use at Mosaic's facility).

     Rather than stating what it cannot understand about the size of a hole in a screen, the length of time used for a salt leach, and the like, Intrepid makes a quantity over quality argument about the number of documents produced by Mosaic regarding those trade secrets (82 pages).  Significantly, Mosaic succinctly described its misappropriated trade secrets in a five page interrogatory response, supplemented by the production of an additional 82 pages of documents.  Mosaic's interrogatory response includes more information than the entirety of Intrepid's production of documents, which Intrepid admits it selected for production because these documents "support[] the Intrepid Defendants' representations" that "each process Mosaic has identified as an alleged trade secret is not actually a trade secret and/or that the Intrepid Defendants have not misappropriated the same."  ECF No. 83-2 (Responses to RFP Nos. 1-15, 37-38, 45, 50, 53-56, 58, and 60).  Indeed, despite failing to produce simple documents such as a comprehensive set of flowsheets, Intrepid produced over 1,500 pages of documents concerning mineral processing and corn starch (none of which were related to Mosaic's misappropriated trade secrets or to Intrepid's own processes).  Therefore, currently Intrepid has a wealth of information about Mosaic's misappropriated trade secrets while Mosaic has very little information on Intrepid's processes.

Significantly, despite its complaints about needing to "understand" Mosaic's trade secrets, Intrepid has never previously sought discovery (such as requests for documents or further interrogatories) seeking to better understand Mosaic's trade secrets. (This is in stark contrast to Mosaic, which tried repeatedly, and is still trying, to obtain documents from Intrepid prior to seeking a plant inspection). Intrepid's lack of discovery aimed at "understanding" Mosaic's trade secrets betrays its motive—the plant inspection is not about "understanding" anything, but instead is merely an attempt to heighten the burdens and risks of this litigation for Mosaic, as discussed in Mosaic's opening brief.

Because Intrepid does not articulate what it cannot "understand" about Mosaic's trade secrets, or how a plant inspection will actually help it fill in any gaps in its understanding of the concepts Mosaic has outlined, Intrepid has failed to meet its burden of establishing relevance. For instance, Intrepid has no legitimate need to view the size of a hole in a screen or salt dissolving in water when the exact dimension of that hole and exact time period of that dissolution have already been provided. Mosaic has already plainly set forth what its misappropriated trade secrets are and produced dozens of pages of documents that explain them (such as PowerPoints, testing data, and process flowsheets). Viewing these misappropriated trade secrets in operation would be cumulative and would merely serve to expose additional trade secrets and confidential information regarding the implementation of the processes.

    2.   <u>Intrepid Fails to Cite Any Authority Supporting Its Request for Inspection</u>

Notably, Intrepid's brief fails to cite any persuasive or binding authority holding that the owner of intellectual property's facilities should be subject to inspection. Using an analogy to patent law, Intrepid cites many cases finding that an inspection of an *alleged infringer's* facility is relevant. *See* Intrepid Br. at 6-7 (citing *Minn. Mining & Mfg., Co., Inc. v. Nippon Carbide*

5

*Indus. Co., Inc.*, 171 F.R.D. 246, 248 (D. Minn. 1997); *Cuno Inc. v. Pall Corp.*, 116 F.R.D. 279, 281 (E.D.N.Y. 1987); *Dow Chem. Co. v. Monsanto. Co.*, 256 F. Supp. 315, 317-18 (S.D. Ohio 1966); *Ft. James Corp. v. J.H. McNairn, Ltd.*, No. 1:04-CV-3000-CAP, 2005 WL 8154755, *2 (N.D. Ga. Oct. 3, 2005)).  However, *Intrepid -- not Mosaic --* is the party alleged to have misappropriated trade secrets and is in an analogous position to an alleged infringer.  In other words, Intrepid's brief makes clear that an inspection of *Intrepid's* facility is appropriate because Intrepid is alleged to have misappropriated trade secrets.  Intrepid's analogy says nothing about Intrepid's entitlement to inspect Mosaic's facilities.

The single case Intrepid cites allowing inspection of the patent owner's facility (rather than the infringer's facility) is no longer good law.  The case, *Nat'l Dairy Prod. Corp. v. L.D. Schreiber & Co., Inc.*, 61 F.R.D. 581 (E.D. Wisc. 1973), is forty-five years old.  At that time, whether or not a patentee used its patent commercially was relevant to the breadth that would be given to claim terms during claim construction.  *Id.* at 583 (citing *Lockwood v. Langendorf United Bakeries, Inc.*, 324 F.2d 82, 88 (9th Cir. 1963)).  The law has since changed, and whether or not the patentee practices its invention is no longer implicated by claim construction.  *See generally Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc) (discussing modern claim construction considerations).  Accordingly, *Nat'l Dairy* would be decided differently today and is not persuasive.

Significantly, this case is *not* a case where there are cross-claims of patent infringement or trade secrets misappropriation.  The only parties accused of malfeasance are Defendants—who conspired to have Gamble take Mosaic trade secrets, upload them to Intrepid computers, and re-design Intrepid's entire langbeinite processing methods and formulas start to finish.  Notably, Gamble, acting as Intrepid's agent, also destroyed the documentary evidence of his

misconduct, and Intrepid has failed to produce meaningful documents regarding its processes and formulas. In contrast, Mosaic is not alleged to have taken or used any Intrepid intellectual property. Accordingly, even though inspection of Intrepid's facilities is relevant, there is no corresponding relevance to the inspection of Mosaic's facilities.

Moreover, Intrepid's cases are distinguishable because this is not a patent case. Patents are matters of public record, and therefore inspection to determine whether a process embodies a patent would necessarily reveal information that is already a matter of public record. This is significant because where the inspection would reveal trade secret or confidential information, the calculus is decidedly different. In such cases, courts have denied requests for inspection. For example, in *Michelin*, the Arizona Court of Appeals considered a request to inspect a tire manufacturing plant that made the tires on a vehicle involved in a fatal accident. 2014 Ariz. App. Unpub. LEXIS 78 *1-2. Disallowing the inspection, the Arizona Court of Appeals reasoned that an inspection was not justified given the potential disclosure of trade secrets compared with the uncertain potential of discovering relevant information given the passage of time since the tire at issue was manufactured. *Id.* at *14. *Michelin* is directly analogous. Here, there is no potential relevance and due to the passage of time an inspection of Mosaic's facility would directly jeopardize disclosure of new trade secrets (not at issue in this case) belonging to Mosaic. *See also Goodyear Tire & Rubber Co. v. Cooey*, 359 So. 2d 1200, 1203 (Fla. Ct. App. 1978) (denying request to inspect manufacturing plant).

### B. Requested Inspection is Not Probative of Mosaic's Efforts to Maintain Secrecy

In its brief, Intrepid now offers a third argument for finding an inspection relevant: that the inspection relates to "the existence of protectable trade secrets in the first place." ECF No. 82 at 1-2. Under New Mexico law, a trade secret is defined as:

7

> information, including a formula, pattern, compilation, program, device, method, technique or process, that:
>
>> (1) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and
>>
>> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.M. Stat. Ann. § 57-3A-2(D). According to Intrepid, an inspection of Mosaic's facility would be relevant to the second prong: whether Mosaic used reasonable efforts to maintain secrecy. Intrepid avers the inspection will reveal "the extent to which the processes are or are not protected from public disclosure." ECF No. 82 at 2.

Yet, Intrepid's request for inspection, ECF No. 73-13, does not actually seek to inspect any of Mosaic's secrecy measures. For example, Intrepid does not request to inspect the perimeter security of Mosaic's plant. Intrepid does not request to inspect the confidentiality agreements signed by vendors entering Mosaic's premises. Intrepid does not ask to inspect Mosaic's IT department to learn the computer security measures, such as passwords, encryption, and the like, implemented by Mosaic. Intrepid's request for inspection has nothing to do with secrecy—it is merely a mirror image of Mosaic's request, which requests to inspect the details of the actual processes employed at the plants. Inspecting the operation of Mosaic's trade secrets at its plant would reveal nothing about the extent to which Mosaic has maintained the secrecy of those trade secrets. Quite to the contrary, Intrepid asks specifically to see changes Mosaic made *after* Gamble's departure. *See* ECF No. 73-13 at (20). Intrepid's suggestion that an inspection is relevant to secrecy is merely a *post hoc* rationalization of its retaliatory request unrelated to the actual terms of its request. This unsupported rationalization does not advance Intrepid's argument that its request is relevant to the case before the Court.

### C. Inspection of Mosaic's Facilities Is Disproportionate

Mosaic, in its opening brief, explained that an inspection of its facility would be disproportionate to the needs of the case. An inspection is disproportionate because, even assuming *arguendo* Intrepid needs to better "understand" Mosaic's misappropriated trade secrets this would not justify exposing the additional Mosaic trade secrets that are currently at use in its facility that were developed since Gamble's departure and are not part of this case. Intrepid does not dispute that these trade secrets would be exposed during an inspection of Mosaic's facility and even concedes that Mosaic's new trade secrets are not relevant. ECF No. 82 at 9. Intrepid's sole rejoinder is that the "the attorneys' eyes only procedures in the parties' Stipulated Protective Order should assuage any concerns that Mosaic has regarding their confidentiality." *Id.*

A protective order allowing Confidential or Attorney's Eyes Only designations is not a cure-all. *See Michelin*, 2014 Ariz. App. Unpub. LEXIS 78, at *14 (denying inspection due to confidentiality concerns notwithstanding existence of protective order in case). You cannot un-ring a bell. As explained at length in Mosaic's opening brief, Gamble stole Mosaic information using USB drives, uploaded that information to Intrepid computers, and accessed his Mosaic email account after his employment with Mosaic ended. Gamble then intentionally destroyed the evidence of this misconduct after being threatened with litigation in direct violation of his discovery obligations. After learning of this conduct, Intrepid did not discipline him but instead promoted him. This history gives no comfort to Mosaic that Defendants will now behave.

Oddly, Intrepid claims that "Mosaic has not submitted any affidavits or other evidentiary documentation to demonstrate why the attorneys' eyes only procedures are insufficient to address Mosaic's concerns." ECF No. 82 at 10. Yet, Mosaic submitted declarations attaching documentary evidence, including transcripts of sworn deposition testimony, regarding

9

Defendants' conduct during this litigation. ECF Nos. 70, 73. Mosaic has shown Intrepid's (including its employee Gamble's) disregard for the rules of litigation. There is a genuine threat of exposure of Mosaic's new trade secrets if an inspection were to occur. Whatever marginal benefit Intrepid contends it may derive from "understanding" Mosaic's misappropriated trade secrets by viewing them in operation (again assuming some are even still in use) does not outweigh the real and present danger to Mosaic of having its other trade secrets exposed.

Finally, but perhaps most importantly, Mosaic takes no comfort – and the Court similarly should take no comfort – in Intrepid's promise that it will respect Mosaic's intellectual property rights and its assurance that Mosaic's trade secrets will be protected by an Attorneys' Eyes Only designation because, as Intrepid simultaneously argues, Intrepid does not believe Mosaic has any trade secrets. From Intrepid's perspective, "at the very heart of this misappropriation lawsuit," is not Gamble's theft of Mosaic's information and his subsequent use of that information at Intrepid but rather whether Mosaic's processes are trade secrets – and it is Intrepid's position that they are not. Intrepid's promise to respect intellectual property rights, the existence of which it simultaneously denies, rings hollow. Accordingly, Intrepid's request is disproportionate to the needs of the case and Mosaic's motion for a protective order should be granted.

## D. Intrepid's Request for An Inspection Was Motivated by Improper Purpose

In its opening brief, Mosaic pointed out that Intrepid's request for an inspection was motivated not by a legitimate need for discovery but instead as a means of retaliating against Mosaic and increasing the burdens and risks of this litigation for Mosaic. Intrepid's response brief confirms this point. As noted above, in its brief, Intrepid shifts its relevance argument for a third time in its search for a justification for its retaliatory request. The clearest evidence of

Intrepid's improper purpose, however, is the manner in which it strains to respond to that very accusation.  *See* ECF No. 82 at 10-11.

      First, unable to explain why it requested to view Mosaic's processes implemented since Gamble's departure, Intrepid states that its request "references" those processes "as a means of separating out irrelevant information."  ECF No. 82 at 11.  This is demonstrably inaccurate—Intrepid's request for inspection does not seek to exclude these processes, it plainly on its face seeks to include them in the inspection.  ECF No. 73-13 at (20).   Next, Intrepid argues that Mosaic is trying to "have it both ways" because Mosaic is simultaneously saying (1) it has additional, confidential information that would be revealed by an inspection and (2) that Intrepid does not need an inspection because it can understand Mosaic's trade secrets through documents.  These two positions are entirely congruent: as Mosaic has been saying all along, the additional, confidential information that Mosaic is seeking to protect from inspection are the trade secrets (and other processes) that it has developed *since* Gamble left and therefore are not the same trade secrets that Intrepid can understand simply by reviewing Mosaic's interrogatory response.  The risk of this additional information being exposed is precisely why Intrepid is attempting to use its request as leverage to deter Mosaic from pursuing its inspection of Intrepid's plant and also the reason why a protective order should be issued.

## CONCLUSION

For the foregoing reasons, Mosaic respectfully requests that its motion for protective order be granted.

Respectfully submitted,

Dated: May 2, 2018

DORSEY & WHITNEY LLP

*/s/ Forrest Tahdooahnippah*
Forrest Tahdooahnippah (pro hac vice)
forrest@dorsey.com
RJ Zayed (pro hac vice)
zayed.rj@dorsey.com
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868

KEMP SMITH LLP
Kathryn Brack Morrow
katy.morrow@kempsmith.com
3800 E. Lohman Ave., Suite C
Las Cruces, NM
575.527.0023
915.546.5360 (FAX)

*Attorneys for Plaintiff Mosaic Potash Carlsbad, Inc.*

## **CERTIFICATE OF SERVICE**

   I HEREBY CERTIFY that on the 2nd day of May, 2018, I served the foregoing REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER FROM PLANT INSPECTION via the Court's CM/ECF system, causing Defendants to be served electronically.

               /s/ Forrest Tahdooahnippah
               Forrest Tahdooahnippah