IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MOSAIC POTASH CARLSBAD, INC.,

    Plaintiff,

v.                                                                                                         No. 16-cv-0808 KG/SMV
                                                                                                          17-cv-1268 KG/SMV

INTREPID POTASH, INC., INTREPID
POTASH-NEW MEXICO, LLC, and
STEVE GAMBLE,

    Defendants,

and

STEVE GAMBLE,

    Counterclaimant,

v.

MOSAIC POTASH CARLSBAD, INC.,

    Counter-defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion for Protective Order from Plant Inspection [Doc. 71], filed on April 6, 2018. Defendants Intrepid Potash, Inc. and Intrepid Potash-New Mexico, LLC ("Defendants") responded on April 18, 2018. [Doc. 82]. Plaintiff replied on May 2, 2018. [Doc. 88]. Having considered the briefing, relevant portions of the record, and relevant authorities, and being otherwise fully advised in the premises, the Court finds that Plaintiff's motion is well-taken and will be GRANTED.

**Background**

Plaintiff and Defendants are competitors. They both operate langbeinite processing facilities outside of Carlsbad, New Mexico. [Doc. 66][1] at 4, 6. Langbeinite is a mineral from which agricultural fertilizers are produced. *Id.* at 5. Plaintiff claims that Defendants misappropriated Plaintiff's trade secrets and other confidential information concerning langbeinite processing and granulation.

Plaintiff alleges that in November 2014, Defendant Steve Gamble, its long-time head of research and development, accepted employment with Defendants without its knowledge. *Id.* at 12–15. Plaintiff alleges that before leaving, Defendant Gamble copied hundreds of confidential files to use in his new position. *Id.* Once Defendant Gamble began his employment with Defendants, Plaintiff alleges, he shared trade secrets to improve their operations. Defendant Gamble, who had been intimately involved in the design of Plaintiff's plants, allegedly made recommendations to Defendants as to how to re-design their facility to improve its efficiency. *Id.* at 18. To that point, Plaintiff claims it had enjoyed a "distinct and significant competitive advantage" over Defendants, recovering approximately 80% of the langbeinite it mined compared with Defendants' 30%, as a result of its trade secret methods for langbeinite processing and granulation. *Id.* at 6, 21. Plaintiff claims that Defendants did then re-design their processing facility and change their granulation formula. As a result, they improved their langbeinite production and recovery. Defendants' rapid success allegedly followed years of

---

[1] Unless specifically noted otherwise, citations to document numbers refer to the docket in Case No. 16-cv-0808 KG/SMV.

attempts—and millions of dollars in investments—to improve its langbeinite recovery, without success.[2] *See id.* at 18–20.

In 2015, Plaintiff filed suit in state court for trade secrets misappropriation, identifying several related causes of action based on these allegations. It subsequently initiated a second suit in federal court in this District. The first case was removed to federal court, and the two cases were consolidated into the present action. *See* [Doc. 54].

On March 14, 2018, Plaintiff served Defendants with a notice of inspection of their facilities.[3] [Doc. 71] at 7; [Doc. 75]. Two days later, Defendants served Plaintiff with a reciprocal notice of inspection. [Doc. 71] at 7; [Doc. 63]. On April 6, 2018, Plaintiff filed the instant motion for a protective order to prevent Defendants from inspecting its facilities. Plaintiff argues that inspection of its facilities is not designed to obtain relevant information, namely because whether or not Plaintiff is actually using its own trade secrets is immaterial to its claims. [Doc. 71] at 8–12. Plaintiff additionally argues that inspection is not proportional to the needs of the case. *Id.* at 12–15. Finally, Plaintiff asserts that Defendants made their inspection request only because Plaintiff itself requested an inspection. This "retaliatory" reciprocal request was improper, Plaintiff contends. *Id.* at 15–16.

Defendants contend that inspection of Plaintiff's plant would yield relevant information and is otherwise proportional to the needs of the case. [Doc. 82]. In the main, Defendants argue

---

[2] Defendants dispute Plaintiff's allegations. *See* [Doc. 68]; [Doc. 82] at 3 n.1. Defendants contend that they made the decision to convert the plant to a langbeinite-only operation before Defendant Gamble was available for hire. [Doc. 82] at 3 n.1. They further contend that Defendant Gamble provided them no trade secret information following his hire. *Id.*

[3] Plaintiff seeks to inspect Defendants' facilities "to determine the extent to which Intrepid has benefited from Mosaic's stolen trade secrets." [Doc. 71] at 2. Defendants apparently do not object to Plaintiff's inspection of their facilities. At a telephonic hearing on May 11, 2018, counsel confirmed they are in the process of scheduling that inspection.

that inspection is necessary so they can better understand the trade secrets at issue in this lawsuit. *Id.* at 4, 7–9. While Plaintiff has provided answers to interrogatories purporting to describe its trade secrets, Defendants contend they remain unclear. *Id.* at 7–8. Defendants further argue that inspection is necessary to determine "the extent to which the processes are or are not protected from public disclosure." *Id.* at 2. They argue that the attorneys' eyes only procedures provided for in the parties' protective order will alleviate any concern about new or further exposure of Plaintiff's trade secrets.

## **Legal Standards**

The proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also Sanchez v. Matta*, 229 F.R.D. 649, 654 (D.N.M. 2004) ("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve full disclosure of all potentially relevant information."). Whether requested discovery is proportional depends on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Though broad, the scope of discovery "is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) (internal quotation marks omitted). The Rules expressly permit inspection into premises, so long as the request comes within the scope of Rule 26(b). *See* Fed. R. Civ. P. 34(a).

Rule 26(c) provides that, upon a showing of good cause, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," which order may include forbidding disclosure or discovery. Fed. R. Civ. P. 26(c)(1)(A). The district court has "broad discretion to decide when a protective order is appropriate and what degree of protection is required." *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)); *see also Miller v. Regents of the Univ. of Colo.*, 188 F.3d 518, 1999 WL 506520, at *12 (10th Cir. 1999) (unpublished table decision) (reasoning that "[t]he district court is in the best position to weigh these variables and determine the appropriate limits because, unlike an appellate court, the district court has the ability to view firsthand the progression of the case, the litigants, and the impact of discovery on parties and nonparties"). The party seeking the protective order has the burden to show that good cause exists for the protective order. *Velasquez v. Frontier Med. Inc.*, 229 F.R.D. 197, 200 (D.N.M. 2005).

## **Analysis**

The Court finds that Plaintiff has shown good cause for a protective order preventing Defendants from inspecting its facilities.

As an initial matter, the Court notes that Plaintiff's planned inspection of *Defendants'* plant does not bear on the relevance or proportionality analysis here. Plaintiff seeks inspection of Defendants' plant to determine whether Defendants are using its alleged trade secrets in processing and granulation. But that rationale for inspection does not apply to the reverse scenario. Whether Plaintiff is using its *own* trade secrets is not relevant to the claims or defenses here. As Plaintiff points out (and as Defendants acknowledge), a party need not be actively

using its own trade secrets to merit their protection under the law. *See* [Doc. 71] at 2; [Doc. 82] at 8.

In the main, Defendants argue that inspection is necessary to "fully understand" the alleged trade secrets involved in Plaintiff's langbeinite processing. [Doc. 82] at 3. They contend the most "efficient and effective way" to evaluate Plaintiff's processing methods, and the trade secrets used therein, is to observe them in person through a plant inspection. *Id.* It is true that comprehension of the alleged trade secrets is relevant to the parties' claims and defenses. Indeed, Plaintiff does not challenge the disclosure of its trade secrets. However, Defendants do not indicate what trade secrets it cannot understand from Plaintiff's discovery responses or how a plant inspection will enhance their understanding. They simply argue that Plaintiff's written discovery responses are inadequate, and a facility inspection will help. By contrast, Plaintiff convincingly suggests that its trade secrets—for example, "the size of a hole in a screen, the time the mineral is exposed to water, the chemical properties of a granule binder"—are straightforward and that inspection of its plant would do little, if anything, to provide further clarity. [Doc. 88] at 3–4.

Even if inspection were relevant, it is not proportional to the needs of the case. Defendants base their need for inspection on the fact that Plaintiff's disclosure of its trade secrets via written discovery is insufficient. [Doc. 82] at 4, 7–8. But, as Plaintiff points out, Defendants have not served further written discovery requesting clarification. Nor have Defendants yet sought to take depositions of Plaintiff's corporate representatives who have knowledge of its trade secrets, pursuant to Fed. R. Civ. P. 30(b)(6). The Court does not find, and Plaintiff does not contend, that Plaintiff's production of written discovery to date is "all the information

6

Intrepid would ever need to fully understand Mosaic's trade secret processes and protections, such that Intrepid is now fully informed." [Doc. 82] at 11. The Court merely finds that Defendants' attempt to leap directly from an unsatisfactory discovery response to inspection of Plaintiff's plant is premature. This is especially true under the circumstances of this case, where Plaintiff alleges Defendants misappropriated trade secrets concerning its langbeinite processing. Plaintiff points out that in the interim years since Defendant Gamble's employment, it may have introduced new trade secrets that it would like to shield from Defendants' eyes. Plaintiff has expressed legitimate concerns about protecting its trade secrets and the intrusion that would result from inspection. *See Long v. United States Brass Corp.*, 2004 WL 1725766, at *4 (D. Colo. June 29, 2004) (unpublished) ("[T]he degree to which a proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection. . . ." (internal quotation marks omitted)).

Defendants also suggest that inspection is necessary to determine whether the trade secrets Plaintiff has disclosed are, in fact, "secrets"—i.e., whether they are "the subject of efforts that are reasonable under the circumstances to maintain [their] secrecy." [Doc. 88] at 8 (quoting NMSA 1978, § 57-3A-2(D)). Defendants assert that inspection will aid them in determining "the extent to which the processes are or are not protected from public disclosure." [Doc. 82] at 2. This argument fails for largely the same reasons. Defendants utterly fail to articulate how an inspection of Plaintiff's plant would yield relevant information on the security and secrecy of the alleged trade secrets. Plaintiff points out that Defendants do not request inspection of its "perimeter security," "confidentiality agreements signed by vendors entering [its] premises," inspection of its information technology department, or other security features.

7

[Doc. 88] at 8. Moreover, there is no indication that Defendants cannot obtain this information through other avenues or that they have been unsuccessful in their attempts to do so.

The Court notes that Defendants have cited a number of patent infringement cases for the general proposition that inspection is a common and appropriate discovery mechanism in cases like this one. *See* [Doc. 82] at 6–7. However, in all but one of the cases, it was the patent-holder claiming infringement that sought to inspect the alleged infringer's facilities. The sole case in which the court permitted reciprocal inspections, *National Dairy Products Corp. v. L.D. Schreiber & Co.*, 61 F.R.D. 581 (E.D. Wisc. 1973), is readily distinguishable. In that case, the alleged infringer sought a reciprocal inspection of the patent-holder's facilities in support of its argument that the patent was a "paper" patent only, i.e., that it was not actually in use by the plaintiff, a distinction that was relevant to the defense. 61 F.R.D. at 583. The rationale for seeking inspection, therefore, was not that inspection provided the best avenue to understand the intellectual property in dispute, but that inspection would resolve the question of whether the patent was in use. Not so in the present case, where the parties agree that whether Plaintiff is using its own trade secrets is immaterial. None of the case law cited by Defendants supports its position that a facility inspection is a common and effective means by which the alleged infringer can better understand the nature of the intellectual property at issue.

Inspection of a premises is a legitimate discovery tool. But, as with all discovery, it is not unlimited in scope. The Court finds that Plaintiff has shown good cause for a protective order preventing Defendants from inspecting its facilities at this time.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion for Protective Order from Plant Inspection [Doc. 71] is **GRANTED**.

**IT IS FURTHER ORDERED** that, pursuant to Fed. R. Civ. P. 37(a)(5), reasonable expenses are **AWARDED** to Plaintiff.  Plaintiff must file an affidavit of such expenses, including attorney's fees, no later than **May 29, 2018**.  Defendants shall have until **June 12, 2018** to file objections to the affidavit.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**