# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**MOSAIC POTASH CARLSBAD, INC.,**

     **Plaintiff,**

**v.**                                                                             **No. 16-cv-0808 KG-SMV**
                                                                                   **No. 17-cv-1268 KG-SMV**
**INTREPID POTASH, INC.,**
**INTREPID POTASH-NEW MEXICO, LLC,**
**and STEVE GAMBLE,**

     **Defendants,**

**and**

**STEVE GAMBLE,**

     **Counterclaimant,**

**v.**

**MOSAIC POTASH CARLSBAD, INC.,**

     **Counter-defendant.**

## ORDER FOR *IN CAMERA* PRODUCTION OF DOCUMENTS

THIS MATTER is before the Court on Plaintiff's Motion to Compel Production of Non-Privileged Documents Considered by Expert Witness Dr. Barbara Arnold [Doc. 221], filed on May 15, 2019. Defendants Intrepid Potash, Inc., and Intrepid Potash-New Mexico, LLC (collectively, "Intrepid") responded on June 4, 2019. [Doc. 233]. Defendant Gamble did not respond. Plaintiffs replied on June 19, 2019. [Doc. 262]. The Court has considered the briefing, the relevant portions of the record, and the relevant law. Being otherwise fully advised in the

premises, the Court orders that Intrepid, no later than **July 8, 2019,** submit to it via email an unredacted copy of the documents at issue for *in camera* review.

## BACKGROUND

Mosaic Potash Carlsbad, Inc. ("Mosaic" or "Plaintiff") sued Defendants Intrepid and Steve Gamble for trade-secret appropriation, among other claims. [Doc. 66] at 22 (Consolidated Complaint). It alleges that Intrepid hired former Mosaic employee Gamble to unlawfully take advantage of his knowledge of Mosaic's confidential langbeinite-processing technique. [Doc. 221] at 2.[1] Intrepid retained Dr. Barbara Arnold, a mineral-processing expert, to testify about Mosaic's alleged trade secrets, whether the trade secrets represent common industry knowledge, and the trade secrets' likely effect on Intrepid's operations. [Doc. 210-1] at 6–7.

Prior to issuing her report, defense counsel sent Dr. Arnold an email apparently with some relevant attachments and with defense counsel's questions about the attachments. *See* [Doc. 233-1] at 2. Dr. Arnold then participated in telephone conversations with defense counsel and an Intrepid employee, Chris Nyikos. [Doc. 233] at 1. She testified that Nyikos clarified and interpreted the attachments to the email. [Doc. 224-3] at 9. On a four-page hardcopy of the email, she took notes about what Nyikos told her. *Id.*; [Doc. 233-1] at 2. The Court will refer to this document—which includes both a copy of the email and Dr. Arnold's notes on it—as "the document." The document lies at the heart of the instant dispute.

Plaintiff sent Dr. Arnold a subpoena ordering production of "[a]ll documents related to [this case] and/or your expert opinions offered in [this] case." [Doc. 224-2] at 1. Dr. Arnold did

---

[1] Langbeinite is a mineral that is mined, produced, and used as crop fertilizer and an animal-feed supplement. [Doc. 221] at 2.

not produce the document because "the attorneys were also on the telephone." [Doc. 224-3] at 9. Plaintiff sent a letter to Intrepid's counsel requesting any notes Dr. Arnold made concerning these conversations. [Doc. 224-4] at 2. Defense counsel declined to produce the document, claiming that the work-product doctrine protected it. *See* [Doc. 224] at 2. On May 15, 2019, Plaintiffs filed the instant Motion to Compel the document's production. [Doc. 221].

## ANALYSIS

Federal Rule of Civil Procedure 26(a)(2)(B) provides that, for an expert witness who—as with Dr. Arnold—provided a written report, the report must contain the "facts or data considered by the witness in forming" her opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii). Rule 26 requires production of factual materials reviewed by an expert prior to issuing a report. *See, e.g.*, *Cordero v. Froats*, No. 13-cv-0031 JCH/GBW, 2016 WL 7426579 (D.N.M. Oct. 27, 2016) (stating that "'facts or data' in Rule 26(a)(2)(B) is interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients." (citing *In re Republic of Ecuador*, 735 F.3d 1179, 1187 (10th Cir. 2013))). These factual materials include notes an expert takes describing facts or data about the lawsuit. *Salazar v. Ryan*, No. CV-96-00085-TUC-FRZ, 2017 WL 2633522, at *7–8 (D. Ariz. June 19, 2017) (stating that notes prepared by an expert are discoverable if they "are mere records of . . . witnesses' direct statements, and do not incorporate [the expert's] analysis, opinions[,] or commentary on those statements"); *Republic of Ecuador v. Bjorkman*, No. 11-cv-01470-WYD-MEH, 2013 WL 50430, at *2 (D. Colo. Jan. 3, 2013) ("[N]otes, outlines, lists, letters[,] and memoranda prepared by an expert or non-attorney concerning or relating to draft expert reports are not protected and must be disclosed."); *In re Republic of Ecuador*, No. 4:11mc73-RH/WCS, 2012 WL 5519611, at *3–4

(N.D. Fla. Nov. 2, 2012) (stating that Rule 26 permits discovery of notes prepared by experts that "are not sent to an attorney and are not part of a draft report").

However, a party need not produce an expert's notes when the notes contain attorney work product. *See* Fed. R. Civ. P. 26(b)(3), 26(b)(4)(C). The work-product doctrine allows a party to refuse to produce even relevant documents "that are prepared in anticipation of litigation" by the party's attorney, "subject to Rule 26(b)(4)." Fed. R. Civ. P. 26(b)(3)(A). Rule 26(b)(4), in turn, permits discovery of certain communications between a party's attorney and an expert. Fed. R. Civ. P. 26(b)(4)(C). Specifically, normal work-product protections do not apply when the communications at issue "identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed." Fed. R. Civ. P. 26(b)(4)(C)(ii).

Intrepid argues that the Court should deny Plaintiff's Motion for three reasons: (1) Dr. Arnold did not "consider" the document when forming her opinion, (2) the document contains attorney work product, and (3) Nyikos' interpretation or clarification of the attachments are not "facts or data" under Rule 26. [Doc. 233] at 3–8. For the following reasons, the Court rejects Intrepid's first argument and reserves ruling on the latter two arguments until it reviews the document *in camera*.

Intrepid first argues that it need not produce the document because Dr. Arnold did not "consider" it when forming her opinion. It argues that she testified that she only considered the *conversations* with Nyikos when preparing her report, not the *notes of those conversations*. [Doc. 233] at 2–3. Dr. Arnold avers, "In completing my Expert Report, I did not refer back to the handwritten notes I made on this hardcopy of Intrepid's counsel's email . . . ." [Doc. 233-2] at 3.

Such an assertion does not preclude a finding that Dr. Arnold considered the document in forming her opinions. "A court should not solely credit the subjective representations of the expert when determining what the expert 'considered.'" *United States v. Dish Network, L.L.C.*, 297 F.R.D. 589, 596 (C.D. Ill. 2013).

> "[E]ven if the expert avers under oath that [s]he did not actually consider certain materials in forming [her] opinion, that will not control," and instead courts apply an "objective test" that defines "considered" as any facts or data on the subject matter learned by the expert at any time before rendering her opinion.

*In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 471 (S.D.N.Y. 2016) (quoting *Euclid Chem. Co. v. Vector Corrosion Techs., Inc.*, No. 1:05 CV 80, 2007 WL 1560277, at *3 (N.D. Ohio May 29, 2007)); *see Dish Network, L.L.C.*, 297 F.R.D. at 595. Rather than asking whether the expert subjectively believed she considered the materials, the court should simply ask whether the "expert has read or reviewed the privileged materials before or in connection with formulating his or her opinion." *Johnson v. Gmeinder*, 191 F.R.D. 638, 649 (D. Kan. 2000). Otherwise, the court would have to "explore the expert's subjective mental processes," risking "the creation of an unwieldy rule that would provide uncertainty as to the protected status of work product." *Id.*

Dr. Arnold's assertion that she did not consider the document therefore matters little. She wrote and presumably read her notes during her conversations with Nyikos and counsel. She took these notes before issuing her expert report. Dr. Arnold, in preparing her report, considered her conversations with Nyikos. Her report itself lists "conversations with Intrepid's Chris Nyikos" in the section entitled "Prior Testimony, Publications, and *Materials Considered*." [Doc. 224-1] at 6 (emphasis added). Any memorialization of factual information discussed in those conversations is discoverable.

The Court cannot resolve Intrepid's two remaining arguments without reviewing the document *in camera*. Courts may, in their discretion, determine whether documents contain privileged communications by conducting an *in camera* review. *FDIC v. United Pac. Ins. Co.*, 152 F.3d 1266, 1276 n.6 (10th Cir. 1998). To conduct an *in camera review*, some "legitimate issue as to the application of the privilege asserted" must exist. *Mounger v. Goodyear Tire & Rubber Co.*, No. 99-2230-JWL, 2000 WL 33712198, at *2 (D. Kan. Sept. 22, 2000). "Such review may be useful if there is a genuine dispute between the parties as to the accuracy of the withholding party's description of certain documents." *Bowne v. N.Y. City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 475 (S.D.N.Y. 1993). "Such review is not, however, to be routinely undertaken, particularly in a case involving a substantial volume of documents . . . ." *Id.*

Intrepid claims that the document constitutes attorney work product, but the Court cannot yet determine whether such an argument has merit. Intrepid claims, "Dr. Arnold's notes . . . necessarily memorialize not only any facts or data potentially provided to her, but also Intrepid's counsel's thoughts on the same, including their significance, and Intrepid's potential responses to the same." [Doc. 233] at 7. Intrepid attaches a nearly entirely redacted copy of the email upon which Dr. Arnold took the relevant notes. [Doc. 233-1] at 2. In the email, counsel apparently asked Dr. Arnold questions about the attachments. *See* [Doc. 233-1] at 2. Intrepid claims that these questions related to trial strategy and that Dr. Arnold took notes on counsel's thoughts about trial strategy when Dr. Arnold, counsel, and Nyikos discussed these questions. [Doc. 233] at 7–8. Yet, the heavily redacted document does not make apparent that these questions concern an attorney's mental impressions or litigation strategy, as opposed to factual questions about the attachments. After all, the questions—if there are any—are redacted entirely. Even if some notes

on the document involved work product, other notes might, as Intrepid argues, "memorialize . . . facts or data" provided to Dr. Arnold. [Doc. 233] at 7. The Court finds that a legitimate dispute exists over whether the document contains work product. Intrepid does not object to an *in camera* review of the document. [Doc. 233] at 1, 6. Because the document is only four pages, such a review should not prove burdensome. The Court will therefore order Intrepid to send it an unredacted copy of the document for an *in camera* review.

Intrepid also argues that Dr. Arnold's notes do not constitute "facts or data" considered because she memorialized Nyikos' *interpretation* of certain attachments, and interpretations are not facts or data. [Doc. 233] at 4. Because the Court will review the document *in camera*, it will reserve ruling on whether it constitutes "facts or data" until it analyzes the unredacted copy.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Intrepid email to the Court an unredacted copy of the documents at issue no later than **July 8, 2019**.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**